IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

DANNY WILSON,                        )
                                     )
            Petitioner,              )
                                     )
                                     )        CIV-13-551-F
v.                                   )
                                     )
JUSTIN JONES, Director,              )
                                     )
            Respondent.              )

REPORT  AND  RECOMMENDATION

Petitioner, a state prisoner appearing with counsel, has filed this Petition for a Writ

of Habeas Corpus pursuant to 28 U.S.C. § 2241.[1]  Petitioner alleges due process violations

in connection with an institutional disciplinary proceeding.   Respondent has responded to

the Petition and filed the relevant records. The matter has been referred to the undersigned

Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).  For the

following reasons, it is recommended that the Petition be denied.

I. Background

Petitioner is incarcerated at the Cimarron Correctional Facility ("CCF"), a private

prison located in Cushing, Oklahoma. On April 5, 2011, Mr. Sebenick, a correctional official

at CCF, authored an offense report which charged Petitioner with the Class A misconduct

_____

[1]Mr. Richard Ravits signed the Petition on behalf of Petitioner but never entered an
appearance in the matter on the prescribed form as required by LCvR 83.4.

1

of "Extortion." In support of the misconduct charge, Mr. Sebenick alleged that Petitioner was "having a friend/family member collect money from other inmate families and making payments to an inmate at this facility." Response, Ex. 3. Petitioner received a copy of the written charge and requested a hearing. Petitioner also requested that an inmate, Mr. Stephen Barbee, be called as a witness to testify that he was "not being extorted."

In an Incident Statement dated April 5, 2011, Mr. Sebenick stated that "[d]uring a recent investigation, it has been determined [Petitioner] is having a friend/family member collect money from individual(s) outside this facility and having money sent to the account of Offender Shelby Gergy . . . . Those individual(s) interviewed indicated they were feeling pressured into sending money." Response, Ex. 4, at 2.

In a second Incident Statement dated April 13, 2011, Mr. Sebenick stated that "[t]he information which was provided to this investigator was substantiated independently by obtaining verification through receipts and money transactions made to the account of Offender Gergy along with postmarked envelopes sent from [Petitioner's] spouse. This information was obtained along with phone calls made (Heard by this investigator) by [Petitioner] to the sister of another inmate at this facility who was the person on the outside trying to obtain monies from family member(s) of other Offender(s)." Response, Ex. 4, at 3.

A written statement from inmate Barbee was obtained by the investigator in lieu of his live testimony at the disciplinary hearing. In a disciplinary hearing conducted on April 18, 2011, Petitioner was found guilty of the misconduct of Extortion. The disciplinary officer stated that evidence relied on for the finding of guilt included the offense report and

incident statement completed by Mr. Sebenick "along with the Confidential Witness statement [which] states that [Petitioner] was having a friend/family [member] pressure another offender's family to send payment to an offender at this facility. This is a means of receiving something by threat or pressure. Staff is considered reliable and has nothing to gain by lying." Response, Ex. 5. Punishment imposed for the misconduct included "time served" in the segregated housing unit, loss of 120 earned credits, and reduction to earned credit level 1 for 60 days. Id.

Petitioner administratively appealed the misconduct decision, alleging numerous due process deprivations. Response, Exs. 6, 7. He specifically argued that there was not sufficient evidence to show that he personally pressured any individual into sending money, that he was not permitted to have his requested witness, Mr. Barbee, testify in person at the hearing, that the hearing officer did not provide good cause for not allowing Mr. Barbee to be present at the hearing, and that the "substance of the confidential testimony" was not described to him as required by the Oklahoma Department of Corrections ("ODOC") regulations. The warden of CCF affirmed the misconduct finding and punishment, and Petitioner's appeal to the ODOC's administrative review authority ("ARA"), which raised the same issues, was denied.

Pursuant to Okla. Stat. tit. 57, § 564.1, Petitioner filed a petition for judicial review of the disciplinary decision in the District Court of Oklahoma County. On December 20, 2011, the district court entered an Order Denying Petition for Judicial Review. Response, Ex. 8. With respect to Petitioner's claim that he was denied due process because he was not

allowed the opportunity to present documentary evidence, the district court found that

> the only documentary evidence requested by Petitioner was the Witness Statement of Stephen Barbee. This was presented at the disciplinary hearing. Petitioner requested no other documentary evidence and presented no other documentary evidence. Petitioner's attorney for the first time now raises that Petitioner wants the telephone call records of Stephen Barbee to his mother. This Court conducts judicial review of the due process rights of Petitioner in the proceedings before the Respondent. Petitioner was given the opportunity to present documentary evidence in the disciplinary proceedings before the Respondent. Petitioner's failure to seek and obtain these telephone records for presentation in the disciplinary hearing will not be reviewed for the first time by this Court. There is no merit to this claim of error.

Response, Ex. 8, at 2-3.

With respect to Petitioner's claim that he was not given the opportunity to call witnesses at his disciplinary hearing, the district court found:

> [t]he record clearly reveals he was given this opportunity. The only witness he requested was fellow inmate Stephen Barbee, who testified by means of a Witness Statement. Petitioner's attorney now claims for the first time that Petitioner wanted to call the mother of Stephen Barbee. This belated request for a witness is again too late and not appropriate for judicial review. Petitioner was given the opportunity to call witnesses. This ground for review is without merit. . . . Petitioner was afforded all of his due process rights to which he was entitled. . . .

Id., at 3.

The Oklahoma Court of Criminal Appeals ("OCCA"), in an Order entered June 7, 2012, affirmed the district court's decision. Response, Ex. 9. The OCCA's Order contains extensive findings. Specifically, the OCCA found that "[a]t the April 18, 2011, disciplinary

hearing, the hearing officer heard from [Petitioner] and Sebenick. The hearing officer also received the written statement of [Mr.] Barbee and a 'confidential witness statement' presented by Sebenick. . . . On hearing this evidence and after 'independently review[ing] the reliability statement' for the confidential witness and finding 'that it sufficiently supports the reliability of the confidential witness,' the hearing officer found [Petitioner] guilty and imposed the earned credit revocation sanction against [Petitioner] as well as other discipline." Id. at 2. The OCCA also found that "when Sebenick investigated the incident and provided [Petitioner] with a copy of the offense report, [Petitioner] was at that time given an opportunity to name those witnesses he wished to call to testify at the disciplinary hearing and an opportunity to list any documentary evidence he wished to present at that hearing." Id. at 3. Further, the OCCA found that Petitioner's "assertion that a review of the tape of his disciplinary hearing would reveal that he expressed a desire to present additional evidence is of no particular consequence where such expression, by itself, would not establish he was denied a fair opportunity to present witnesses and documentary evidence in a manner contrary to due process." Id. at 4.

II. Petitioner's Claims

In his § 2241 Petition, Petitioner asserts, without benefit of any legal support, that his due process rights were violated in the disciplinary proceeding because he requested at the disciplinary hearing the "telephone records of [telephone calls from himself] to [inmate] Barbee and [from inmate] Barbee to [Mr. Barbee's] mother to be introduced into evidence" and he was also not provided a transcript or a tape of the disciplinary hearing to prove he

requested the telephone records.

In a second ground for relief, Petitioner contends that he was denied due process because he was not allowed to present as witnesses "in person" inmate Barbee and inmate Barbee's mother. Finally, in his third ground for habeas relief, Petitioner contends that he was denied due process because he was not given the opportunity to confront the confidential informant and there was no finding of the informant's reliability at the hearing.[2]

Respondent contends that Petitioner did not exhaust available administrative or judicial remedies because in his administrative appeal Petitioner did not assert a due process deprivation based on the failure to allow him to call inmate Barbee's mother as a witness or the failure to allow him to present "telephone records" as evidence. Alternatively, Respondent contends that Petitioner was not denied due process in the disciplinary proceeding.

III. Exhaustion of Remedies

Although 28 U.S.C. § 2241 does not contain an explicit exhaustion requirement, exhaustion of available remedies is required for petitions brought under § 2241. Garza v. Davis, 596 F.3d 1198, 1203 (10th Cir. 2010). See Wilson v. Jones, 430 F.3d 1113, 1117 (10th Cir. 2005)(noting habeas petitioner seeking relief under 28 U.S.C. § 2241 is required to first

---

[2]Petitioner's claim that "the Trial and Appeals Court erred in summarily affirming the ruling at the Disciplinary Hearing" presents a state law issue that is not cognizable in this federal habeas proceeding. The Court should not address this issue as it has no legal merit. See Smith v. Phillips, 455 U.S. 209, 221(1982)("Federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension.").

exhaust available state remedies, absent showing of futility); Montez v. McKinna, 208 F.3d 862, 866 (10th Cir. 2000)("A habeas petitioner is generally required to exhaust state remedies whether his action is brought under § 2241 or § 2254."). The exhaustion requirement is satisfied when the petitioner "us[es] all steps that the agency holds out." Woodford, 548 U.S. at 90.

In the ODOC's well-established grievance policy, OP-090124, the ODOC has established a "four-step process for administrative exhaustion of prisoner claims. Initially, a prisoner must seek to resolve any complaint by informally raising the matter with an appropriate staff member." Little v. Jones, 607 F.3d 1245, 1249 (10th Cir. 2010). "If the matter is not resolved informally, the prisoner must submit an RTS [Request to Staff]." Id. "If the matter still remains unresolved, the prisoner may file a Grievance Report Form ('grievance') with the reviewing authority, which is usually the prison's warden." Id. "Finally, a prisoner may appeal the warden's decision to the Administrative Review Authority ('ARA')." Id. According to the ODOC's grievance policy, "'[t]he ruling of the [ARA] . . . is final and [concludes] the internal administrative remedy available to the inmate. . . .'" Id. (quoting ODOC Inmate/Offender Grievance Process, § VII.D.1). See Thomas v. Parker, 609 F.3d 1114, 1117 (10th Cir. 2010)("The ODOC grievance process has a requirement of informal consultation with staff, then three written steps: a Request to Staff form, a formal grievance, and an appeal to the administrative review authority."), cert. denied, __ U.S. __, 131 S.Ct. 1691 (2011).

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must

exhaust his remedies in state court. In other words, the state prisoner must give the state

courts an opportunity to act on his claims before he presents those claims to a federal court

in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).  See Woodford v.

Ngo, 548 U.S. 81, 92 (2006);  Rose v. Lundy, 455 U.S. 509 (1982).  Oklahoma allows state

inmates to challenge on due process grounds the result of a disciplinary proceeding through

a petition for judicial review, Okla. Stat. tit. 57, § 564.1.

In his state court petition for judicial review, Petitioner alleged a due process

deprivation occurred in the disciplinary proceeding because he "want[ed] the telephone call

records of Stephen Barbee to his mother."  Response, Ex. 8, at 2.  Thus, even if, as

Respondent alleges, Petitioner did not assert this claim in his administrative appeal of the

misconduct, he exhausted state remedies concerning this claim asserted in ground one of the

Petition.

In his administrative appeal, Petitioner asserted that he was denied due process in part

because he was not allowed to present Mr. Barbee as a witness at the hearing.  In his state

court petition for judicial review, Petitioner alleged a due process deprivation occurred in the

disciplinary proceeding because he "wanted to call the mother of Stephen Barbee."

Response, Ex. 8, at 3.  Thus, Petitioner exhausted state remedies concerning the due process

claims asserted in ground two of the Petition.

The ODOC ARA also addressed in Petitioner's administrative appeal his claim that

there was no determination of the reliability of confidential witness testimony.  The ARA

found that "[a] determination of the reliability of the confidential witness testimony was

completed in compliance with 'Department Offender Disciplinary Procedures' OP-060125, Section I, C." Response, Ex. 7, at 3.  Thus, Petitioner exhausted remedies concerning the claim he raises in ground three of the Petition.  Because Petitioner raised the claims he presents herein in his administrative appeal and/or in his state court petition for judicial review, Respondent's motion to dismiss the Petition for lack of exhaustion of available remedies should be denied.

IV. Due Process in Disciplinary Proceedings

Petitioner has asserted due process deprivations in connection with his institutional disciplinary proceeding.  "It is well settled that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment." Howard v. U.S. Bureau of Prisons, 487 F.3d 808, 811 (10th cir. 2007)(quotation and citation omitted).  However, the "full panoply of rights due a defendant in [criminal] proceedings does not apply" in the prison disciplinary context. Wolff v. McDonnell, 418 U.S. 539, 556 (1974).

> In prison disciplinary proceedings, the inmate must receive, at a minimum:
>
>> (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

Howard, 487 F.3d at 812 (quoting Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454 (1985))(internal quotation marks omitted).  Further, "revocation of good time does not

comport with the minimum requirements of procedural due process unless the findings of the prison disciplinary board are supported by some evidence in the record." Superintendent, Mass. Corr. Inst., 472 U.S. at 454.

"Ascertaining whether [the 'some evidence'] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-456. Even "meager" evidence can support a finding of guilt in a disciplinary proceeding. Howard, 487 F.3d at 812 (quoting Mitchell v. Maynard, 80 F.3d 1433, 1455 (10th Cir. 996))(internal quotation marks omitted).

"Chief among the due process minima outlined in Wolff was the right of an inmate to call and present witnesses and documentary evidence in his defense. . . ." Ponte v. Real, 71 U.S. 491, 495 (1985). This right, however, is "circumscribed by the necessary 'mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application.'" Baxter v. Palmigiano, 425 U.S. 308, 321 1976)(quoting Wolff, 418 U.S. at 556).

Because of the safety concerns related to confrontation and cross-examination, "'there is no general right to confront and cross-examine adverse witnesses' in the context of prison disciplinary proceedings." Howard, 487 F.3d at 812-813 (quoting Baxter, 525 at 321, 322 n. 5). "And while prison officials must consider an inmate's request to call or confront a particular witness . . . on an individualized basis, . . . errors made by prison officials in

denying witness testimony at official hearings are subject to harmless error review." Id. at 813 (internal quotations and citations omitted). In the same manner "as with a prisoner's request to call a particular witness, prison officials are required to consider a request for documentary evidence on an individualized basis." Id.

Petitioner contends that during his disciplinary hearing he requested "the telephone record of [himself] to Barbee and Barbee to [Barbee's] mother to be introduced into evidence." Petition, at 5. However, in the first Incident Report Mr. Sebenick stated that Petitioner was "having a friend/family member collect money from individual(s) outside this facility and having money sent to the account of offender Shelby Gergy. . . . Those individual(s) interviewed indicated they were feeling pressured into sending money." Mr. Sebenick stated in the second Incident Report that he had "substantiated independently" information "through receipts and money transactions made to the account of Offender Gergy along with Postmarked envelopes sent from Offender Wilson's spouse" and that he had actually heard the "phone calls made . . . by Offender Wilson to the sister of another inmate at this facility who was the person on the outside trying to obtain monies from family member(s) of other Offender(s)." Response, Ex. 7, at 3. Nothing in these incident reports indicated that either Petitioner or Mr. Barbee had made phone calls as part of the alleged extortion.

Petitioner states that during the disciplinary hearing he testified that "he told [Mr.] Barbee his mother could cash in two green dot cards that [Petitioner] had from a Wal-Mart store. [Mr.] Barbee's mother would receive $200. She could keep $50 and give $150 to a

11

friend Alisha outside the prison." Petition, at 3 (ECF page number 4). Assuming the truth

of Petitioner's statement concerning his testimony at the hearing, this testimony provided no

plausible explanation of the circumstances that were alleged in the offense report and in Mr.

Sebenick's incident reports. The testimony also failed to explain why Petitioner needed Mr.

Barbee's mother to "cash in" two green dot (prepaid debit) cards, or how she could have

accomplished this transaction, or why she would then be obligated to transfer a portion of the

money to another individual outside of the prison. In short, Petitioner has not shown that the

testimony of Mr. Barbee's mother or the record of any telephone calls between Mr. Barbee

and his mother would have been supportive of Petitioner's defense to the misconduct charge.

Petitioner requested the testimony of Mr. Barbee at the hearing, and the investigator

chose to obtain and submit a written statement by Mr. Barbee at the hearing for security

reasons. Petitioner has not shown that this documentary evidence less than adequately

preserved his conditional right to present witnesses at the hearing or his right to present

documentary evidence at the hearing. Any failure of the disciplinary hearing officer to call

Mr. Barbee as a witness was harmless error.

Both the OCCA and the ARA found that the disciplinary hearing officer considered

the statement of one or more confidential informants and made findings on the record

concerning the reliability of the statement(s). These factual findings are presumed correct,

and Petitioner has not overcome the presumption with clear and convincing evidence under

28 U.S.C. § 2254(e)(1). See Branham v. Workman, 2006 WL 960656, * 3 (10th Cir.

2006)(unpublished op.)(applying § 2254(e)(1) and "deferential" review in Oklahoma

prisoner's § 2241 proceeding challenging adequacy of disciplinary proceedings where petitioner's claims had previously been adjudicated in state court proceeding). Mr. Sebenick's second Incident Report contained a statement concerning his independent verification of the confidential witnesses' reports through other evidence, including listening to telephone calls made by Petitioner "to the sister of another inmate at this facility who was the person on the outside trying to obtain monies from family member(s) of other Offender(s)." This statement adequately informed Petitioner of the evidence relied upon to find that the confidential informant's statements were reliable.

Finally, there is some evidence to support the finding of guilt and imposition of punishment in the challenged disciplinary proceeding. Mr. Sebenick provided statements in the incident reports setting forth evidence, some of which he obtained first hand and some of which was obtained through reliable confidential informants, that supports the finding of guilt. Moreover, in Mr. Barbee's statement he admitted sending money to an individual outside of the prison. Consequently, Petitioner has not shown that he was denied the minimal due process guarantees to which he was entitled in the disciplinary proceeding, and his Petition should be denied.


RECOMMENDATION

Based on the foregoing findings, it is recommended that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 be DENIED. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this

Court by ___November 12th___, 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States of America, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this ___29th___ day of ___October___, 2013.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE